not to an independent commission. If we are correct in this view, it follows that the members of the common council of Mt. Vernon, who are required by the charter to serve without pay, cannot be compensated for their action in reference to the construction of bridges, nor can the highway commissioner of the town of Pelham receive any more than the sum allowed him by law for his daily services.

This discussion is not to be construed as passing upon the validity of the various amendatory statutes making important changes in the highway law, in so far as the town of Pelham and the city of Mt. Vernon are concerned, but merely as holding that there is no provision of the statutes which would permit of the payment of the plaintiff's claim, or those of the other officers.

Judgment for the defendants on submission of controversy, without costs. All concur.

---

(73 App. Div. 357.)

### LENNAN v. HAMBURG–AMERICAN S. S. CO.

(Supreme Court, Appellate Division, First Department. June 13, 1902.)

1. VESSELS—COLLISION—LOCATION—HIGH SEAS—QUESTION FOR JURY.

In an action against a steamship company to recover for the drowning of plaintiff's husband, resulting from a collision between his pilot-boat and defendant's steamer, the captain of the steamer testified that the collision occurred more than three miles from shore, on the high seas. All the witnesses testified that the boat sunk at once, and the government surveyors afterwards located the wreck at a point outside the three-mile limit. A pilot on the boat and three disinterested witnesses testified that the collision occurred at a point well within three miles from the shore, and that there was an ebb tide and strong current running from that point to the point where the wreck was found. The court dismissed the complaint on the ground that the evidence showed the collision occurred on the high seas. *Held* error, the question being for the jury.

2. NEW JERSEY—JURISDICTION—SEAS—THREE-MILE LIMIT.

The statute of New Jersey giving a right of action in case of death by negligence applies to, and gives a right of action in case of, death from negligence occurring on the seas within three miles from the New Jersey shore.

Appeal from trial term, New York county.

Action by Mary W. Lennan, as executrix of the will of John M. Lennan, against the Hamburg-American Steamship Company. From a judgment dismissing the complaint at the close of the case, plaintiff appeals. Reversed.

The action is to recover for the death of plaintiff's husband, John W. Lennan, a pilot on the pilotboat James Gordon Bennett, which was in collision with the defendant's steamer, the Alene, off Sandy Hook, on the afternoon of August 17, 1901, and immediately sank, whereby he was drowned. The answer admits that the collision occurred, but denies that it was owing to defendant's negligence, and avers that the negligence was on the part of those in charge of the pilotboat, and admits that by the laws of New York and New Jersey a right of action for negligence causing death is given, "but denies that said collision or death occurred within the jurisdiction and the waters of the state of New York, or of the state of New Jersey, but at a point outside the jurisdiction and waters, to wit, upon the high seas." At the conclusion of the trial the defendant moved to dismiss

the complaint on several grounds, and the motion was granted, the court saying: "I think it is plainly shown that this boat was struck beyond the three-mile limit. I do not think, upon that question, that there is enough to submit to the jury." Exception was taken, and from the judgment entered, dismissing the complaint, the plaintiff appeals.

Argued before McLAUGHLIN, PATTERSON, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

William Lindsay, for appellant.
Clarence Bishop Smith, for respondent.

O'BRIEN, J. The learned trial judge dismissed the complaint upon the ground that there was evidence to prove that the accident occurred beyond the three-mile limit. There was conflicting evidence on that point. The rule is well settled that a question of fact such as this—assuming there is evidence to justify its submission to the jury—is for the jury, and not for the court, to determine. In other words, the court is not at liberty to take a question of fact from the jury, and dismiss the complaint, except where there is no evidence offered which would support a verdict, or unless the facts are undisputed. If there is any conflict in the evidence, and if the evidence is capable of diverse interpretations, or if the inferences which may be drawn from it are doubtful, it is the province of the jury to pass upon the questions of fact presented. McDonald v. Railway Co., 167 N. Y. 66, 60 N. E. 282. With this rule in mind, it becomes necessary to examine the testimony for the purpose of determining whether or not the plaintiff presented sufficient proof which would justify a finding in her favor that the accident occurred within the three-mile limit. If she did, then, although there may have been a strong showing by the defendant from which a directly opposite conclusion might be reached, it was for the jury, and not the court, to pass upon the question as one of fact.

No doubt, the court was strongly influenced by one piece of evidence presented in the case, bearing upon the question of the exact location of the final resting place of the sunken pilotboat, to mark which the government of the United States has placed a suitable buoy. This point was concededly beyond the three-mile limit; but, in giving that fact controlling effect, we think the learned trial judge overlooked what here clearly appears both from the testimony of the plaintiff and that of the defendant,—that the position finally occupied by the sunken vessel was not the point where the vessels collided, so that, regardless of the final resting place of the pilotboat (assuming it is where it has been marked by the government buoy), neither the plaintiff nor the defendant claimed that such was the place of collision. With respect to the exact point of collision there was a serious conflict, as a summary of the facts, which we think necessary, will sufficiently show:

It appears from the chart of New York harbor entrance, which is in evidence, that eastward of a line drawn from Navesink light to Scotland light-vessel, and thence to the life saving station on Rockaway Beach, is beyond the jurisdiction of New Jersey or New York, and is known as the "High Seas"; that the line dividing the New

York and New Jersey jurisdictions touches the line of the high seas about a third of the distance between Scotland light-vessel and the life saving station at Rockaway; that the mouth of Gedney channel, where the Alene dropped her pilot and sailed southward for Jamaica, and the spot where the plaintiff's witnesses claim the collision occurred, which is midway between the mouth of Gedney channel and the Scotland light-ship, are within the New Jersey jurisdiction boundary; and that the location of the buoy placed by the United States government as making the wreck of the James Gordon Bennett, and the spot where the defendant's captain claims the accident happened, are east of the line of the high seas, and north of Scotland light-vessel. As stated, neither the plaintiff's nor the defendant's witnesses fix the spot of the accident at the place where the pilotboat is marked as resting; and it would appear that, according to the former, the boat must have drifted or been swept by undertow about half a mile to the east and south, and according to the latter about a quarter of a mile south and westerly. There is testimony that in this vicinity the tide runs very swiftly, and that when the accident occurred there was an ebb tide, so in this respect the plaintiff's location of the accident seems the more probable. It was testified that the boat sank at once, some stating that it was cut in two pieces by the Alene. A diver, however, asserts that he found a wrecked pilotboat near the government's buoy, and it was intact, lying with its bow westward, with the right side somewhat injured, although he could not, in the swift tide and dull light, read the name; no other pilotboat had been wrecked for six years. Whether this was the sunken pilotboat Bennett was also for the jury to say. Measurements by experts establish that this wreck, assuming it to be the Bennett, is more than three miles from shore. It is insisted by plaintiff, however, that the actual collision occurred well within the three-mile limit.

Frank Hopkins, also a pilot on the pilotboat, was picked up by the Alene after the collision, and he testified, "We were right between the Scotland light-ship and Gedney channel, a customary ground for pilotboats to await steamers," and he says, "A man in our business can tell about his bearings from the relation of the land and objects." His testimony agrees with that of the first officer of the steamer Morro Castle, which at the time of the collision was discharging a pilot at the mouth of Gedney channel, who says he saw the Alene stopping with wreckage around her bow, and she was about halfway to Scotland light-ship; both the Alene and the Morro Castle being inside the Scotland light-ship. He marked on the chart, within three miles of shore, the spot of the accident, and the location of the Morro Castle. The captain of the Morro Castle corroborates the testimony of the first officer in every detail, and states further that he went right by the Alene and the wreckage on his way close by the light-ship, and the wreckage was drifting out to sea. The master of a steam barge who had been engaged in dredging, and was bound for the "dump," about three miles southeast of Scotland light-ship, was delayed at the mouth of the Gedney channel by the Alene and the Morro Castle, and was just starting southeast from there, and looking

through his glass to see how to pass the pilotboat, and saw the Alene strike the boat. He says, "The collision occurred inside of the Scotland light-ship, and considerably inside the imaginary line;" that there was a strong ebb tide, and, though the boat went down at once, there was floating wreckage which drifted easterly and northerly, the wind being southwest; that the Alene was midway between him and the Scotland light-ship. For the defendant, the captain of the Alene testified that after he discharged his pilot he started in a southeasterly direction, and soon after headed south, and saw the pilotboat heading about southeast, on a starboard tack, about two miles away; that he then saw her on a port tack, and he put his wheel to starboard to pass by her stern, as was his duty; that he saw her over his port bow, and she did not again change her course, and was not moving much; that he again gave the order "Starboard," and then, when he was about 2½ ship lengths away, gave the order "Port," and reversed his engines, but he went right over her; that about a minute before he had taken his bearings, and the Scotland light-ship was southwest of him, two miles away. On the chart he located the accident outside the imaginary line, and north and east of the wreck buoy of the government.

It thus appears that only one witness (an interested officer of the steamship) places the collision outside the three-mile limit, while three entirely disinterested witnesses, all experienced seamen and officers familiar with the locality, declare that they saw the collision at the place marked inside the three-mile limit; and such testimony coincides with that of a pilot of the pilotboat. Furthermore, although the wreck is now apparently located outside the three-mile limit, this is explained by the testimony that there was a strong ebb tide, which admittedly carried the floating wreckage eastward. So the circumstances existing at the time of the accident are with the plaintiff.

We have thus reached the conclusion that upon the conflict in the evidence as to the point of collision there was a question of fact presented, which it was in the province of the jury, and not of the court, to decide. To support the dismissal, however, the respondent urges upon our attention several other grounds,—such as failure on the part of the plaintiff to prove either negligence on the part of defendant, or absence of contributory negligence on the part of plaintiff's intestate. These also, we think, upon the evidence, were questions for the jury.

Similarly, we have examined the question of whether the court had jurisdiction of this action, and in this connection have considered the contention of the plaintiff that, even if it be concluded that the accident happened beyond the three-mile limit, that would not be fatal to recovery, because, having occurred within harbor limits, and within cannon shot of the shore, the vessels at the time were in the jurisdiction of the state of New Jersey. We do not think, however, that the plaintiff's case is aided by this contention, nor by the further claim that the pilotboat was enrolled in and belonged to the state of New York, and therefore, although upon the high seas, was a part of its territory; and we do not find that this latter claim was advanced upon the trial or asserted in the complaint, reliance having been placed upon the

right to récover under the New Jersey statute, which, in case of death by negligence, gives a right of action.

The more serious consideration, and one which goes to the question of jurisdiction, is whether, assuming the collision to have taken place within the three-mile limit, the state of New Jersey had jurisdiction. Regard being had to the agreement made between the states of New York and New Jersey, as assented to by the government of the United States, we have concluded, upon this subject of jurisdiction, that the view taken by the learned trial judge was right, and that, upon proof that the accident occurred within the three-mile limit, it was within the jurisdiction of the state of New Jersey, and, this action being brought upon the statute of that state, a recovery might be had upon the disputed questions being resolved in plaintiff's favor.

It is unnecessary for us to consider the other interesting questions which have been discussed in the respective briefs, it being sufficient for the purposes of this appeal to say that we think the right to a recovery depends upon establishing that the accident occurred within the territorial jurisdiction of the state of New Jersey, and that upon this question the plaintiff made out a prima facie case entitling him to go to the jury. For the error committed, therefore, in dismissing the complaint, there must be a reversal of the judgment; and accordingly a new trial is ordered, with costs to the appellant to abide the event. All concur.

. INGRAHAM, J. I concur with Mr. Justice O'BRIEN, and wish to add that the judgment of Brett, J., in Reg. v. Keyn, 2 Exch. Div. 124, correctly states the common law as to the jurisdiction of the state over the waters within a maritime league of the shore. That such was the common law of England has been expressly declared by parliament, and seems to be concurred in by the courts of England and the United States. See note to this case in 5 Eng. Ruling Cas. 973.